USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __2/28/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA SOMOSKY,

                              Plaintiff,

              -against-

CONSUMER DATA INDUSTRY ASSOCIATION,

                              Defendant.

---

1:20-cv-04387 (MKV)

**OPINION AND ORDER
GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

The Amended Complaint in this case asserts claims under the Sherman Act, 15 U.S.C. § 2, (the "Act"), predicated on the allegation that Defendant Consumer Data Industry Association ("CDIA") "exercise[s] monopolistic power in violation of section 2" of the Act. (Am. Compl. [ECF No. 15] ¶ 133). This Matter comes before the Court on the Motion of CDIA to dismiss the Amended Complaint. [ECF No. 25]. For the reasons discussed below, the Motion to Dismiss is granted in full.

## BACKGROUND[1]

### I.    Plaintiff's Injury

Plaintiff obtained several non-qualified education loans from Sallie Mae in 2005 and 2006 while at William and Mary College. (Am. Compl. ¶ 125). Thereafter, she experienced financial difficulties after the 2008 recession. She alleges that she "sought relief under Title 11 [of the Bankruptcy Code] in this Court" and obtained a discharge in 2013. (Am. Compl. ¶¶ 9–11, 126; Affidavit of Melissa Somosky ("Somosky Affid.") [ECF No. 16] ¶¶ 1–2). The

---

[1] Unless otherwise noted, the facts are taken from the Amended Complaint, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, this Court need not "accept as true all of the [legal conclusions] contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

information was scheduled to be removed from her Credit Report by 2020.  (Am. Compl. ¶ 126).
However, in 2018, Navient Solutions LLC ("Navient") attempted to collect on a debt that had
been discharged.  (Am. Compl. ¶ 11; Somosky Affid. ¶ 3).  Sallie Mae refused to update
Plaintiff's Credit Reports to reflect discharge of the Tuition.  (Am. Compl. ¶ 127).  In 2019,
Plaintiff sought to reopen the "bankruptcy proceeding to seek a determination that certain student
loan debts had been discharged, and that [Navient] was violating section 524 by demanding
payment on the discharged debt."  (Am. Compl. ¶ 127; [ECF No. 16, at 2]).  Plaintiff "thereafter
entered into a confidential settlement."  (Am. Compl. ¶ 128).

Plaintiff's Credit Reports now list the Navient Debt as "included in bankruptcy 2013,"
which she contends is correct, but that this information is scheduled to remain on her report until
2026, which she alleges is longer than allowed by law.  (Am. Compl. ¶¶ 12–13).  She
specifically cites the Transunion report as reflecting that the "Navient Debt was included in
bankruptcy in 2013—but also that Somosky is 'paying as agreed.'"  (Am. Compl. ¶ 14).
Plaintiff seems to allege that Equifax has been unable to resolve her complaints on this matter as
well, apparently referring her to call "999-999-9999" with any problems.  (Am. Compl. ¶ 15).
Plaintiff complains that the "information currently being reported is internally inconsistent."
(Am. Compl. ¶ 17).

Plaintiff alleges that "after the Credit Bureaus reported the loans were discharged in
bankruptcy, they also re-aged the information so that they would remain on [Plaintiff's] Credit
Reports for another seven years, causing her credit score to drop by 100 points."  (Am. Compl.
¶ 129).  Neither Navient nor the Consumer Reporting Agencies (CRAs) will correct her Credit
Reports and this has been an ongoing problem for 18 months.  (Am. Compl. ¶ 19).  She alleges
that she has "been entirely shut out of the credit markets" during this time.  (Am. Compl. ¶ 19).

Plaintiff asserts that she submitted the disputes to the Credit Bureaus, but they were all rejected. (Am. Compl. ¶ 130).  The CRAs will "not remove the negative and inaccurate remarks because the CDIA has mandated that the Credit Bureaus accept whatever information the Data Furnishers report even when that information is patently contradicted by other information in her Credit Reports, such as her lack of any bankruptcy in the last 10 years."  (Am. Compl. ¶ 130).  Plaintiff alleges that CDIA's behavior therefore constitutes "exercise of monopolistic power in violation of Section 2 of the Sherman Act."  (Am. Compl. ¶ 133).

## II.    Metro 2 Format

Plaintiff alleges that in 1970, Congress passed the Fair Credit Reporting Act ("FCRA") to safeguard credit reporting data and protect customers.  (Am. Compl. ¶¶ 28–29).  She asserts that the FCRA regulates the credit reporting industry and requires the industry to adopt and employ reasonable procedures to ensure that consumer information was prepared with the "maximum possible accuracy."  (Am. Compl. ¶¶ 30–31).  Plaintiff alleges that the credit reporting market uses the Metro 2 Format to aggregate and refine consumer information into credit reports.  (Am. Compl. ¶ 32).

According to Plaintiff, in 2012, the Federal Trade Commission reported that 42 million consumers had errors in their Credit Reports and, as such, the Consumer Financial Protection Board ("CFPB") assumed a new regulatory role over the credit reporting market.  (Am. Compl. ¶¶ 43–44).  Plaintiff charges that after this, the CRAs "surrendered" to the Metro 2 Format for credit reports.  (Am. Compl. ¶¶ 45–48).  Plaintiff alleges that Metro 2 "run[s] on old technology," and that the format is overly secretive.  (Am. Compl. ¶¶ 50–56).  She alleges that because of this secrecy, "young entrepreneurs cannot examine Metro2 and think how much

better a job they could do," and "journalists don't write stories about how antiquated it is compared to apps on their iPhone that cost $1.99." (Am. Compl. ¶¶ 57–58).

Plaintiff alleges that banks and merchants that supply CRAs with data "are *forced* to purchase membership in the CDIA before they are allowed to supply data to the Credit Bureaus. Consumers are *forced* to participate as subjects of the Data." (Am. Compl. ¶¶ 33, 69, 100) (emphasis in original). Plaintiff further alleges that "CDIA controls the Market through Metro2 and Metro2 is in control of more than 90% of the marketplace for consumer credit reporting procedures." (Am. Compl. ¶ 99). She then alleges that CDIA is protected by its monopoly over the market for consumer credit reporting procedures and, as such, does not innovate or invest in the development of "new and better Consumer reporting procedures." (Am. Compl. ¶¶ 105–113).

### III.    Procedural History

Plaintiff filed her original complaint on June 11, 2020. [ECF No. 2]. In a pre-motion letter, Defendant sought leave to file a Motion to Dismiss. [ECF No. 11]. In response, Plaintiff sought leave to amend the complaint, [ECF No. 12], which the Court granted, [ECF No. 13]. Plaintiff thereafter filed her amended complaint, and Defendant moved to dismiss shortly thereafter.

Plaintiff requests that the Court enter "preliminary and permanent relief as is necessary and appropriate to restore competitive conditions in the markets affected by the CDIA's unlawful conduct," as well as judgment for actual damages, treble damages, punitive damages, attorneys' fees and costs and any additional relief that the Court may find just and proper. (Am. Compl. ¶ 134).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  The Court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

## ANALYSIS

### I.    Plaintiff Lacks Article III Standing To Assert Her Claim

Defendant does not raise the issue of Article III standing, however, "[b]ecause the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433

F.3d 181, 198 (2d Cir. 2005). In an antitrust case, a plaintiff must have not only constitutional standing under Article III of the U.S. Constitution, but also antitrust standing. *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983). A careful review of the Amended Complaint makes clear that Plaintiff does not have Article III standing to assert this claim and therefore, the Court lacks jurisdiction to consider it.

Article III of the U.S. Constitution requires an "actual case or controversy" between the parties to a suit in order for a federal court to entertain the action. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[S]tanding is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir.2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[S]tanding consists of three elements': the individual initiating the suit 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The party seeking to invoke federal jurisdiction bears the burden of establishing each of these elements. *Spokeo*, 136 S. Ct. at 1547.

Plaintff is unable to sufficiently allege that the alleged unlawful conduct is traceable to Defendant's actions. "The traceability requirement for Article III standing means that the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (citation omitted). "[T]he injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560 (1992) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)).

Plaintiff has not sufficiently alleged that her injuries are traceable to any actions of the CDIA.  Instead, Plaintiff's allegations are directed at the conduct of Navient and the CRAs, which allegedly reported inaccurate information on her credit reports and refuse to correct them. Plaintiff has not named Navient or any of the CRAs as defendants in this action.  As such, Plaintiff's injuries are "highly indirect and 'result[] from the independent action of some third party not before the court.'"  *Allen v. Wright*, 468 U.S. 737, 757 (1984) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (quoting *E. Kentucky Welfare Rts. Org.*, 426 U.S. at 42).  Consistently, the Supreme Court, and countless lower courts, have held that plaintiffs fail to show traceability where their alleged injuries are caused by third parties' intervening conduct.  *See id.* at 756–57 (no standing to sue Treasury officer where plaintiffs alleged that tax exemptions provided to schools with discriminatory policies diminished plaintiffs' ability to have their children educated in integrated schools); *E. Kentucky Welfare Rts. Org.*, 426 U.S. at 41–45 (no standing to sue Treasury officer where plaintiffs alleged that IRS ruling allowing favorable tax treatment to nonprofit hospital offering only emergency room services to indigents resulted in denial of services to plaintiffs).

As such, Plaintiff lacks Article III standing to sue Defendant.  Therefore, Defendant's Motion to Dismiss is granted and the action is dismissed for lack of jurisdiction.

## II.    Plaintiff Fails To State A Claim Under Section Two Of The Sherman Act

Even if Plaintiff had standing to maintain this action against CDIA, she fails to state a claim upon which relief could be granted under section two of the Sherman Act.  Plaintiff first

fails to sufficiently allege an antitrust injury that could establish antitrust standing.  Plaintiff also fails to plead facts to sufficiently establish a viable relevant market to support her claim.

### A.  Plaintiff Insufficiently Alleges An Antitrust Injury

Section 2 of the Sherman Act ("Section 2"), makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ."  15 U.S.C. § 2.  To sufficiently plead a claim under Section 2, an antitrust plaintiff must sufficiently allege Article III and antitrust standing.  *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016).  "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013) (citation omitted).  "Antitrust law has long recognized that defendants who may have violated a provision of the antitrust statutes are not liable to every person who can persuade a jury that he suffered a loss in some manner 'that might conceivably be traced' to the conduct of the defendants." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 157 (quoting *Reading Indus., Inc. v. Kennecott Copper Corp.*, 631 F.2d 10, 12 (2d Cir. 1980)).

"To satisfy the antitrust standing requirement, a private antitrust plaintiff must plausibly allege that (i) it suffered an antitrust injury and (ii) it is an acceptable plaintiff to pursue the alleged antitrust violations."  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 157.  To establish antitrust injury, "the plaintiff must demonstrate that its injury is 'of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

To determine whether an antitrust injury is pleaded, the Court compares the plaintiff's allegations of anticompetitive conduct by the defendant with the "actual injury the plaintiff alleges" to determine whether the "the actual injury the plaintiff alleges" flows from "the 'anticompetitive effect of the specific practice at issue.'" *Gatt Commc'ns*, 711 F.3d at 76 (citations omitted).

Plaintiff cannot establish that her injury flows from the alleged unlawful conduct of Defendant.  According to Plaintiff, the purported anticompetitive conduct is that CDIA unlawfully prevents the "Credit Bureaus and other market participants from competing to develop new methodologies in credit reporting." (Am. Compl. ¶ 132).  Her alleged injury is that the credit bureaus improperly re-aged her student loan information on her credit reports, "causing her credit score to drop by 100 points." (Am. Compl. ¶ 129).

Comparing the alleged unlawful conduct to the alleged injury, Plaintiff insufficiently pleads facts supporting an inference that her alleged injury flows from that purported unlawful conduct.  Her allegations in support of causal inference are that:

    a.   "The Credit Bureaus will not remove the negative and inaccurate remarks because the CDIA has mandated that the Credit Bureaus accept whatever information the Data Furnishers report even when that information is patently contradicted by other information in her Credit Reports, such as her lack of any bankruptcy in the last 10 years," (Am. Compl. ¶ 130);

    b.   "But for the monopolistic of the CDIA [sic], the plaintiff and her attorney would have successfully cleared her Credit Report and allowed her to return to normal economic activity without resort to litigation," (Am. Compl. ¶ 116); and

    c.   "But for the CDIA's monopolistic control over the credit reporting though Metro2, Somosky would not have spent the last year of her life trying to fix this problem and would have access to a competitive marketplace that would create accurate and reliable Credit Reports using reporting procedures such as those utilized by the Credit Bureaus for businesses," (Am. Compl. ¶ 132).

Plaintiff asserts that without Defendant's alleged unlawful conduct, the marketplace could establish better guidelines, which would have prevented Plaintiff's injury. (Pl. Opp'n 9).

However, these allegations are wholly conclusory and provide no factual support for Plaintiff's claim that but-for CDIA's implementation of the Metro 2 Format, her credit score would have not been harmed and she would not have expended significant resources attempting to correct her credit reports. Moreover, Plaintiff's claim is speculative. Plaintiff does not reference a CDIA rule or regulation to support her claims in either the Amended Complaint or her Opposition to the Motion to Dismiss. As such, Plaintiff's "alleged injury is too attenuated from the source of the alleged misconduct [of CDIA]" to survive a Motion to Dismiss. *Laydon v. Mizuho Bank, Ltd.*, No. 12-CV-3419 GBD, 2014 WL 1280464, at *8 (S.D.N.Y. Mar. 28, 2014) (quoting *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 402 (S.D.N.Y. 2011)).

Plaintiff claims instead that her injury is "inextricably intertwined" with the alleged injury CDIA sought to inflict on its target market, the credit reporting market. (Pl. Opp'n 9). Generally, "[c]ompetitors and consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 158 (citation omitted). However, in *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), the Supreme Court "carved a narrow exception to the market participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 158 (citation omitted). To plead that an antitrust injury was "inextricably intertwined" with the injuries of market participants, a plaintiff must sufficiently allege that the defendant injured the plaintiff in a secondary market as a means to conduct illegal conduct in the defendant's targeted market. *See id.* at 161. That injury must be "'necessary' and 'essential' to the success of the incumbent

[defendant's] anticompetitive scheme, not merely 'incidental' or a 'byproduct.'" *Id.* (citation omitted).

Plaintiff fails to allege any facts to support a claim that her injury was "inextricably intertwined" with any alleged injury CDIA purportedly sought to inflict on its target market. Indeed, in her briefing, Plaintiff merely mentions the buzz words "inextricably intertwined," cites to *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), and then provides a high-level overview of the standard.  (*See* Pl. Opp'n 9–10).  But she provides no allegations or explanation of how her injury was "inextricably intertwined" with CDIA's alleged unlawful conduct here or with the injuries of other market participants.  Indeed, this is likely because she cannot do so.  Her Amended Complaint includes no allegations that CDIA targeted Plaintiff specifically as a means to further its alleged unlawful conduct or that any such targeting was a necessary means to that end instead of merely incidental.  *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 161.  As such, Plaintiff cannot establish that her injury was "inextricably intertwined" with the alleged injury CDIA purportedly sought to inflict on its target market.

Because Plaintiff has failed to plausibly allege an antitrust injury, she lacks antitrust standing from which to bring her claims.  For this reason, the Court need not address whether Plaintiff would be an efficient enforcer of the antitrust laws, though the Court has reservations about whether she is.

> **B.  Plaintiff Has Not Sufficiently Alleged A Viable
> Relevant Market To Support Her Section 2 Claim**

To state a claim under Section 2 of the Sherman Act, a plaintiff also must allege "a plausible relevant market in which competition will be impaired."  *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447,

455–56 (1993).  In her original complaint, Plaintiff alleged that the relevant market for her Section 2 claim was the "credit reporting guidelines" market.  [ECF No. 2].  In its pre-motion letter seeking leave to file a Motion to Dismiss, Defendant argued, *inter alia*, that Plaintiff had failed to define a plausible relevant market.  [ECF No. 11].

In her Amended Complaint, Plaintiff now alleges that the monopolized market is the "credit reporting market," (Am. Compl. ¶ 31), which Plaintiff contends includes the three CRAs: Experian, Equifax, and Transunion.  (Am. Compl. ¶ 34).  Plaintiff concedes that these credit reporting agencies are competitors.  (Pl. Opp'n 3).  However, "[t]he Second Circuit has stated that a shared monopoly theory may not support a monopolization or attempted monopolization claim under Section 2."  *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 382 (S.D.N.Y. 2016) (collecting cases).  Plaintiff cannot sustain a claim under Section 2 on a theory that three competing firms are conspiring to dominate a single market.  *See H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1018 (2d Cir. 1989) (holding that courts cannot aggregate the market shares of competing firms to establish liability under Section 2 of the Sherman Act); *Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, No. 19-CV-02832 (LAK), 2019 WL 8435369, at *2 (S.D.N.Y. Nov. 7, 2019), *aff'd*, 831 F. App'x 584 (2d Cir. 2020) ("[A]s the prefix "mono" suggests . . . there can be only one monopolist [in a Section 2 claim].").  As such, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted on this ground as well.

Plaintiff responds to Defendant's Motion by contemplating that she is not pleading a "shared monopoly," but is in fact pleading a monopoly by a single defendant: CDIA.  (Pl. Opp'n 13–14).  She asserts that she sufficiently pleads that "[t]he CDIA allows no competition in its marketplace and has acquired and kept this monopoly through control over the CRAs."  (Am.

Compl. ¶ 98–104).  However, Plaintiff's argument is illogical unless the alleged market was the credit reporting *guidelines* market, as Plaintiff alleged in her original complaint.  [ECF No. 2].  Plaintiff appears to be trying to address the deficiency in her pleading by changing the market she alleges was monopolized, while attempting to maintain her original theory regarding the alleged monopolization.  This argument fails.  Plaintiff fails to state a claim upon which relief can be granted.

### III.   The Amended Complaint Is Dismissed With Prejudice

Defendant asks that, should the Court dismiss Plaintiff's Amended Complaint, it do so with prejudice because further amendment would be futile.  (Def. Mot. 23).  Plaintiff responds that the Court cannot conclude that further amendment would be futile because the Court has already concluded once, when it granted Plaintiff leave to amend the original complaint, that further amendment would not be futile.  (Pl. Opp'n 15).  However, while leave to amend should be freely given, there is no requirement to allow seriatim amendments.  *Trident Int'l Ltd. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*, No. 05 CV 3947 (PAC), 2007 WL 9818003, at *1 (S.D.N.Y. Nov. 29, 2007).  Free leave need not be given should further amendment prove futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Having reviewed the Amended Complaint and the positions of the parties, it is clear that further amendment would prove futile.  Plaintiff has already had one chance to amend her complaint to address Defendant's arguments for dismissal and has still failed to state a claim upon which relief can be granted.  Indeed, Plaintiff's own complaint concedes that the relevant market she seeks to rely on for her Section 2 claim has at least three competitors, the three CRAs, which itself precludes a meritorious Section 2 claim.  (Am. Compl. ¶ 34); *see also H.L. Hayden Co.*, 879 F.2d at 1018.  Moreover, Plaintiff does not provide any further facts, in

addition to what is already included in the amended complaint, that she could plead to support a valid claim for relief.

Plaintiff's argument that amendment cannot be futile since the Court has already granted her leave to amend once is unpersuasive.  The Court previously gave Plaintiff leave to amend because it had not yet considered Defendant's Motion to Dismiss and the Court concluded that it would be in the interest of judicial economy to allow amendment before addressing any such motion.  [ECF No. 13].  The Court has now considered the original Complaint, the Amended Complaint, and Defendant's Motion to Dismiss.  The Court concludes that granting leave to further amend would be futile.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss, [ECF No. 25] is GRANTED.  Plaintiff's Amended Complaint, [ECF No. 15] is dismissed with prejudice.

The clerk of court is respectfully requested to terminate docket entry 25 and to close this case.


**SO ORDERED.**

**Date:   February 28, 2022**
**         New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

14